UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHARLES MONACO and KRISTINA MONACO, Husband and Wife,<br><br>Plaintiffs,<br><br>v.<br><br>GARY LOCKE, Governor of the State of Washington; et al.,<br><br>Defendants. | No. C05-178Z<br><br>ORDER |

**I.   INTRODUCTION**

This matter comes before the Court on Defendants' Motion for Summary Judgment, docket no. 24.  Having considered the briefs in support of and opposition to the motion, the Court now GRANTS this motion for the reasons stated in this Order.

**II.   BACKGROUND**

Plaintiffs in this case are the maternal grandparents of two children, A.W. and A.M. Compl., docket no. 5, ¶ 3.  The children were placed in foster care by Washington's Department of Social and Health Services (DSHS) after A.W. was removed from the care of Amy Monaco, one of Plaintiffs' adult daughters.  Id. ¶¶ 18-21.  Upon birth, A.M. was placed directly into foster care.  Id. ¶ 21.

ORDER   1–

1  After the children were removed from Amy Monaco's care, A.W. was initially placed
2  in the Plaintiffs' home. Compl., docket no. 5, ¶ 19. However, the child was removed
3  shortly thereafter. Id. ¶ 20, 21.

4  Jenny King is a social worker who was assigned to the case. King Decl., docket no.
5  26, ¶ 2. At the request of Amy Monaco and the Plaintiffs, Ms. King conducted a home visit
6  to determine if Plaintiffs' home was suitable for long term placement of the children. King
7  Decl., docket no. 26, ¶ 7. Ms. King recommended the children be placed in another home
8  and declined to do a more extensive home study. Id. Upon review of the Plaintiffs' file, she
9  found over twenty referrals were made to DSHS. Id. These referrals were "unfounded" in
10 that DSHS never made a "founded" finding of abuse and neglect. Compl., docket no. 5, ¶ 7;
11 Answer, docket no. 6, ¶ 7. Plaintiffs do not deny the referrals were made against them, and
12 declare that they "received copies of the 'referrals' but from what we read in those the
13 allegations do not justify what CPS is telling people about us," Monaco Decl., docket no. 36,
14 ¶ 12. Ms. King's decision regarding placement was reviewed by her supervisor and
15 evaluated by a prognostic staffing team made up of supervisors, social workers and
16 professionals. King Decl., docket no. 26, ¶ 10.

17 Ms. King wrote a letter to the Monacos explaining why placement was denied. King
18 Decl., docket no. 26. In the letter, she noted a history of non-cooperation with social
19 workers and unresponsiveness to suggestions that Plaintiffs seek services for their children.
20 Id. Ms. King did not specifically cite the unfounded referrals as reason for her placement
21 decision; however, the referrals are what prompted the social worker visits and subsequent
22 notes about poor cooperation and the lack of follow through. Id. Ms. King also ordered
23 Plaintiff, Kristina Monaco, not to attend the visitation sessions between A.M. and Amy
24 Monaco so that the mother and child could bond. Id.

25 There have been numerous state court proceedings regarding custody and placement
26 of these children prior to this action, and on each occasion the judge upheld the state's

ORDER 2–

determination that it was not in the best interest of the children to live with Plaintiffs. Def. Mot., docket no. 24 at 3. In July 2002, Judge Armstrong ordered A.M. into DCFS (Department of Child Family Services) approved placement, docket no. 37 at 4. Plaintiffs filed a motion to intervene in the children's dependency hearing in November 2002, which was denied by Commissioner Hollis Holman, docket 25-2 at 10. Plaintiffs filed a motion to revise the Commissioner's ruling, which was denied. Id. at 11. Finally, Amy Monaco, the mother of the children, filed a motion for placement of her children with Plaintiffs. Id. at 13. Plaintiffs were witnesses in the hearing, but placement was again denied. Id. Plaintiffs subsequently filed this lawsuit in state court, and Defendants removed the case to this Court in January, 2005, docket no. 1.

Plaintiffs received an extension from the Court in which to file a Response to the Motion for Summary Judgment, docket no. 30. Despite the extension, the Response was still one day late and Plaintiffs requested another extension in order that the Court consider their tardy Response, docket no. 35.[1]

### III. DISCUSSION

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact based on the evidence before the court. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party meets its initial responsibility, the burden shifts to the opposing party to establish that a genuine issue actually exists for a material fact. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Evidence submitted by the party opposing summary judgment is presumed valid, and all

---

[1] Defendants did not oppose the one-day extension Plaintiffs requested to file their Response. In order to decide the case on its merit, the Court GRANTS the Motion, docket no. 35.

ORDER 3–

1  reasonable inferences that may be drawn from that evidence must be drawn in favor of the
2  party opposing summary judgment.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255
3  (1986).  However, a party opposing a motion for summary judgment "may not rest upon the
4  mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that
5  there is a genuine issue for trial."  Id. at 248.

6  Defendants move this Court to grant summary judgment for failure to state a claim.
7  Def. Mot., docket no. 24.  Plaintiffs allege five causes of action: defamation; invasion and
8  violation of privacy; violation of civil rights; conspiracy and conspiracy to violate civil
9  rights; and intentional infliction of emotional distress.  Compl., docket no. 5.

10      1.    Defamation Claim

11  To defeat summary judgment, Plaintiffs must plead sufficient facts to establish the
12  four elements of defamation: falsity, an unprivileged communication, fault, and damages.
13  See Mark v. Seattle Times, 96 Wn.2d 473, 486, 635 P.2d 1081 (1981).  The heart of
14  Plaintiffs' defamation claim appears to be DSHS' alleged disclosure to a placement
15  "prognostic staffing team" that there were over twenty referrals made about the Plaintiffs to
16  DSHS, docket no. 5 at 10.  Plaintiffs also allege DSHS "overtly and affirmatively recorded
17  false information in their records regarding plaintiffs and refused to correct that false
18  information."  Compl., docket no. 5, ¶ 28.  However, besides this cursory pleading in the
19  complaint, Plaintiffs have not provided the Court any particularity as to what false
20  information may have been recorded by DSHS.  The Plaintiffs declare that they "received
21  copies of the 'referrals' but from what we read in those the allegations [they] do not justify
22  what CPS is telling people about us."  Monaco Decl., docket no. 36, ¶ 12.  Plaintiffs fail to
23  tell the Court what untruthful information "CPS is telling people" with any particularity.
24  Even if these broad allegations sufficiently plead the element of falsity, the
25  defamation claim fails because the communication was protected by a qualified privilege.
26  Defendants assert qualified privilege exists because (1) Defendants were inferior state

ORDER  4–

officials, and (2) Defendants reasonably believed there were facts that another sharing a common interest was entitled to know, docket no. 24 at 7-8. The question of privilege is for the Court to decide as a matter of law. <u>Gem Trading Co. v. Cudahy Corp.</u>, 92 Wn.2d 956, 960, 603 P.2d 828 (1979). The Court concludes that as state actors, Defendants are entitled to a qualified privilege. Existence of qualified privilege shifts the burden to Plaintiffs who must show abuse of the privilege through "actual malice." <u>Parry v. Brown Assoc.</u>, Wn. App. 193, 197, 730 P.2d 95 (1986). To prove actual malice, the plaintiff must show that the speaker knew the statement was false, acted with a high degree of awareness of its probable falsity, or in fact entertained serious doubts as to the statement's truth. <u>Herron v. King Broadcasting</u>, 109 Wn.2d 514, 523, 746 P.2d 295 (1987).

Plaintiffs assert that Ms. King is not entitled to qualified immunity because she did not act in good faith. Plaintiffs argue Ms. King acted in violation of state law RCW 26.44.020 which prohibits sharing "unfounded" referrals to child placing agencies when she disclosed the referrals to the prognostic staffing team, docket no. 32 at 7.[2] However, DSHS is statutorily allowed to "conduct ongoing case planning and consultation with those persons or agencies required to report under this section, with consultants designated by the department." RCW 26.44.030(7). Given this statutory authorization to conduct case planning with department consultants, Ms. King's disclosures during a prognostic staffing meeting cannot support a finding of actual malice. In addition, Plaintiffs fail to provide any evidence that shows the Defendants "entertained serious doubts as to the truth" of their communications about the Plaintiffs as required for a finding of actual malice. <u>See</u> <u>Herron</u>, 109 Wn.2d at 523. Thus, the Court finds that the defamation fails because Defendants'

---

[2]The law states that "[n]o unfounded allegation of child abuse or neglect may be disclosed to a child-placing agency, private adoption agency, or any other provider licensed under chapter 74.15 RCW." RCW 26.44.020. A child-placing "agency" for purposes of this rule specifically excludes any "agency operated by any unit of local, state, or federal government." RCW 74.15.020(2)(p).

ORDER 5−

communications were protected by qualified privilege and Plaintiffs fail to provide evidence that could reasonably support a finding the Defendants abused that privilege.

2.  Substantive or Procedural Due Process Claim Under 42 U.S.C. §1983

In order to maintain an action for depravation of civil rights under 42 U.S.C. § 1983, the Plaintiffs must show they were deprived of a constitutional right by a state actor.  It is not disputed that Defendants acted under the color of state law as employees of a state agency.  Plaintiffs claim both substantive and procedural due process violations.  First, they assert Defendants have violated their constitutional right to maintain familial bond with their grandchildren. Response, docket no. 32 at 9.  Second, Plaintiffs assert they were deprived of procedural due process because they "were not given any notice and opportunity to be heard in their own defense when decisions were being made by defendants regarding plaintiff's [sic] suitability as a placement resource for their grandchildren." Id.

Plaintiffs state that under Moore, grandparents have a constitutional right to be in contact with their grandchildren.  Moore v. City of East Cleveland, 431 U.S. 492, 503, 97 S. Ct. 1932, 52 L. Ed. 2d 531 (1977).  Moore involves a housing law that limited grandparents from living with extended family.  Id.  However, the Ninth Circuit has refused to extend Moore to provide a substantive right for a grandparent to adopt or have visitation with their grandchildren based on biology alone.  See Mullins v. Oregon, 57 F.3d 789 (9th Cir. 1995); Miller v. California, 355 F.3d 1172 (9th Cir. 2004).  The Ninth Circuit has clearly distinguished the right to live as a familial unit and the right to adopt or visit grandchildren and declined to find a liberty interest in the latter. Id.  Even when a close relationship between grandparents and their grandchildren existed, the court found the relationship between grandparents and their grandchildren "conferred no other, or weightier interest of constitutional dimension." Miller, 355 F.3d at 1176.[3]

---

[3] Defendants also rely on Graham v. Children's Services Division, which held "grandparents do not have a liberty or property interest in their grandchildren as prospective adoptive

ORDER   6–

In this case the Plaintiffs do not have a protectable liberty interest at stake nor have the Plaintiffs been deprived of process due them.  As evidenced by all prior state court custody decisions affirming the placement decision, DSHS has provided good reasons why it is in the best interest of the children to be placed outside the Plaintiffs' home.  See docket no. 25 at 10-12.  The Plaintiffs have not established that they are due any more process than they have already received.

Plaintiffs contend that because Amy Monaco requested they care for the children and state law provides that "absent good cause, the department shall follow the wishes of the natural parent regarding the placement of the child," they are entitled to a relationship with their grandchildren that cannot be deprived without due process.  See Response, docket no. 32 at 11;  RCW 13.34.260; see also Troxel v. Granville, 530 U.S. 57 (2000) (Reasoning that a fit parent's decision regarding the care of her children should be given weight in visitation decisions.)  Id. at 68.  However, in this case the state did provide good cause why the parent's wishes should not be followed.  The letter written by Ms. King to the Plaintiffs outlines a number of causes that support the placement decision.  King Decl., docket no. 26. In the letter, Ms. King notes "a clear pattern of unwillingness to cooperate with members of our agency."  Id.  Ms. King also supports the decision not to place the children in the home because after services were recommended by social workers there was "little or no follow through by your family with [accessing] these services."  Id.  Finally, Ms. King supports the decision to deny visitation as necessary in order for A.M.'s mother to maintain and build their mother/daughter bond through one-on-one interaction.  Id.

This finding of good cause to deviate from Amy Monaco's wishes was confirmed by the state court, and reconfirmed on reconsideration.  The law does not provide grandparents

---

children." 591 P.2d 375 (1979).  The case is fairly analogous and clearly distinguishes Moore from adoption cases.

ORDER  7–

any additional statutory rights to more process to challenge DSHS's placement decision.[4]

Additionally, the Plaintiffs are not entitled to heightened protection of the Fourteenth Amendment because no fundamental rights or liberty interests are at stake. Therefore, the due process claims under 42 U.S.C. §1983 must be dismissed.

### 3. Conspiracy to Violate Civil Rights

The conspiracy claim cannot stand absent a protectable liberty interest and fails for the same reasons as outlined above.

### 4. Intentional Infliction of Emotional Distress

Intentional infliction of emotional distress has three elements: (1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) severe emotional distress. Washington v. Boeing Co., 105 Wn. App. 1, 17, 19 P.3d 1041 (2000). The first element requires proof that the conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Dicomes v. State, 113 Wn.2d 612, 630, 782 P.2d 1002 (1989) (internal quotations omitted). This element should go to a jury if reasonable minds could differ as to whether the action was so extreme as to result in liability. Id. However, after construing the evidence most favorably to the Plaintiffs, this claim also fails as a matter of law. After a complete review of the record, as a matter of law Defendants' actions cannot be considered "extreme and outrageous" in this case.

Summary judgment is not appropriate "if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability." Dicomes v. State, 113 Wn.2d 612, 630, 782 P.2d 1002 (1989). When a plaintiff asserted she was called a "bitch" and a "cunt" by her managers and the court "conclude[d] that reasonable persons could deem the

---

[4]Plaintiffs assert they were "not given any notice and opportunity to be heard in their own defense when decisions were being made by defendants" and contend they should have been allowed to "participate and defend against the false information being presented" at the prognostic staffing meeting. Response, docket 32 at 9.

ORDER 8–

employer's conduct, as set forth in the unchallenged findings, sufficiently outrageous to trigger liability." Robel v. Roundup Corporation, 148 Wn.2d 35, 51, 59 P.3d 611 (2002). In contrast, an employee who was fired from her job and alleged a management study was "an intentionally prepared false report created for the sole purpose of embarrassing, humiliating and then terminating" her did not trigger liability for outrageous conduct. Diacomes, 113 Wn.2d at 630. The court noted that the employer "discharged plaintiff by privately delivering a termination letter . . . [t]his cannot be considered atrocious and intolerable in a civilized society." Id.

Like the plaintiff in Diacomes, the Plaintiffs in this case simply do not assert conduct that rises to a level of outrageousness sufficiently extreme to result in liability. In support of their claim, the Plaintiffs make conclusive statements that the Defendants violated state and federal law and that Defendants "refused to refer the matter for an adoption home study or otherwise fulfill the agency duties to plaintiffs . . . ." Response, docket no. 32 at 11. As a matter of law, this alleged conduct is not outrageous and does not support a claim for intentional infliction of emotional distress.

5.  Invasion of Privacy

The Plaintiffs allege invasion of privacy. Plaintiffs assert that "Defendants violated plaintiffs' rights to privacy by disbursing non-conviction data relating to plaintiffs contrary to the law," docket 5, ¶ 42. A restriction on disbursing non-conviction data is found in the Criminal Privacy Act, RCW 10.97. However, the Act does not apply to this case because DSHS is not a criminal justice agency and did not disburse non-conviction data. See RCW 10.97; see also docket no. 37 at 8. Therefore, the claim cannot rest on a violation of the Criminal Privacy Act.

Plaintiffs also assert that using "unfounded or inconclusive" referrals against Plaintiffs in the placement decision would support the invasion of privacy claim, docket no. 32 at 13. But to support a claim of invasion of privacy, the Plaintiffs must show a highly offensive fact

ORDER  9–

was "given publicity" to the general public. Restatement (Second) of Torts § 652 D.[5]  The alleged disclosure in this case was made to a specialized group in making a placement decision.  The Restatement notes that "publicity" means "that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." See Restatement (Second) of Torts § 652 D, note a.  Disclosure during the prognostic staffing meeting did not constitute publicity.  In addition, the facts were related to a legitimate concern of the state, which is not the type of "public disclosure" contemplated by the law. See Restatement (Second) of Torts § 652 D.

## IV.  CONCLUSION

The Court GRANTS Defendants' Motion for Summary Judgment.  There is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

IT IS SO ORDERED.

DATED this 31st day of March, 2006.

Thomas S. Zilly
United States District Judge

---

[5] The Restatement (Second) of Torts says  "One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." Restatement (Second) of Torts § 652 D.

ORDER   10–